# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRAINSTORM XX, LLC<br>d/b/a WWW.ROBOCALLS.CASH,<br>and<br>LEE "DOC" COMPTON<br><br>   *Plaintiffs,*<br><br>v.<br><br>JOHN DOE 1, a/k/a PETER<br>BERGMAN, a/k/a JOSH KING,<br>individually and/or d/b/a<br>ROBOCALLSCASH.NET, and<br>ROBOCALLSCASHKIT.COM;<br>ROBOCALLSCASH.NET, an entity<br>using an assumed name;<br>ROBOCALLSCASHKIT.COM, an<br>entity using an assumed name; and<br>JOHN DOES 2-9; and<br>JANE DOES 1-9,<br><br>   *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:20-cv-00554<br>Judge Mazzant |

## **PRELIMINARY INJUNCTION ORDER**

  Plaintiffs BRAINSTORM XX, LLC, d/b/a WWW.ROBOCALLS.CASH, and LEE "DOC" COMPTON filed their Complaint for Permanent Injunction and Other Equitable Relief against Defendants and moved for an *ex parte* temporary restraining order and order to show cause why a preliminary injunction should not issue under Rule 65 of the Federal Rules of Civil Procedure. The Court has considered the Complaint, declarations, exhibits, testimony, and memorandum of law filed in support, and finds that the Motion be **GRANTED**.

### FINDINGS

1. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over the parties.

2. This Court is a proper venue for this case.

3. The Defendants received actual notice of this hearing but have failed to identify themselves to Plaintiffs or the Court.

4. The Complaint states a claim upon which relief may be granted under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

5. The Lanham Act allows this Court to grant a preliminary injunction upon a showing that, considering the Plaintiff's ultimate likelihood of success and weighing the equities, a preliminary injunction is in the public interest.

6. The Plaintiffs have shown a likelihood that they will ultimately succeed on the merits. Based upon the evidence presented, there is good cause to believe that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in connection with the marketing, sale, and offering for sale of an anti-robocall kit that empowers consumers to stop illegal robocalls to consumers nationwide.

7. To preliminarily enjoin Defendants, Plaintiff must show that its sales tactics (including pay-per-click advertising and website) are "likely to cause confusion" among consumers as to the source, affiliation, or sponsorship of Defendant's products or services. See *id.;* 15 U.S.C. § 1114(1); *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 663 (5th Cir. 2000). A "likelihood of confusion" means that confusion is not just possible, but probable. *Westchester,* 214 F.3d at 663-64; see also *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 3 (5th Cir. 2008) (holding district court correctly used the standard "more than a mere possibility of confusion").

8. To be entitled to a preliminary injunction, a party must demonstrate it meets a four-prong test:

>(1) a substantial likelihood of success on the merits;
>
>(2) a substantial threat of immediate and irreparable harm with no adequate remedy at law;
>
>(3) that greater injury will result from denying the Preliminary Injunction then granting it; and
>
>(4) that a Preliminary Injunction will not disserve the public interest.
>
>*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

"The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The Court finds that it should grant Plaintiffs' Preliminary Injunction because Plaintiffs have produced sufficient evidence to meet each element of the four-part test.

**A.     Plaintiff is Likely to Succeed on the Merits Under the Lanham Act**

9.      Pursuant to Section 43(a)(1)(A) of the Lanham Act, "[a]ny person who ... uses in commerce any word, term, name, symbol, or device, ... which ... is likely to cause confusion, or to cause mistake ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

10.     To preliminarily enjoin Defendants, Plaintiff must show that its sales tactics (including pay-per-click advertising and website) are "likely to cause confusion" among consumers as to the source, affiliation, or sponsorship of Defendant's products or services. See *id.;* 15 U.S.C. § 1114(1); *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 663 (5th Cir. 2000). A "likelihood of confusion" means that confusion is not just possible, but probable. *Westchester,* 214 F.3d at 663-64; see also *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 3 (5th Cir.

2008) (holding district court correctly used the standard "more than a mere possibility of confusion").

11. The Lanham Act protects consumers from being misled by the use of "unfair practices by an imitating competitor." *Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 428, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003) (internal quotations omitted). The language of Section 43(a) is broader than much of the Lanham Act in that it "prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Dastar Corporation v. Twentieth Century Fox Film Corporation,* 539 U.S. 23, 32, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003); accord *Texas Tech University v. Spiegelberg,* 461 F.Supp.2d 510, 523 (N.D.Tex.2006) (Cummings, J.).

12. In this instance, the Court finds Plaintiff has presented sufficient evidence of actual confusion among consumers by presenting multiple consumer declarations detailing their purchases based on actual confusion, and the Compton's declaration detailing how he is routinely forced to deal with upset and confused consumers on a routine, if not daily, basis.

    **1.    Plaintiff's Declarations Establish the Likelihood of Consumer Confusion**

13. The critical question is whether Defendants' sales practices violate the Lanham act by suggesting affiliation, endorsement, or false association. *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 484 (5th Cir. 2004). In determining whether a likelihood of confusion exists, courts consider the following non-exhaustive list of factors: "(1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion." *Id.* at 484-85. "Courts also consider (8) the degree of care exercised by potential purchasers." *Board of Supervisors for*

*Louisiana State University v. Smack Apparel Co.,* 550 F.3d 465, 478 (5th Cir.2008), *cert. denied,* 556 U.S. 1268 (2009). No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these "digits of confusion." *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998); *Paulsson,* 529 F.3d at 310. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus. See *Scott Fetzer,* 381 F.3d at 485.

14. In analyzing the "likelihood of confusion," a court should first "consider the application of each digit in light of the specific circumstances of the case" and next "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer,* 381 F.3d at 485 (quoting *Elvis Presley,* 141 F.3d at 197); accord *Lyons Partnership v. Giannoulas,* 179 F.3d 384, 389-90 (5th Cir.1999). However, the court need not closely analyze each factor if it finds that for purposes of a preliminary injunction that a plaintiff has adequately offered sufficient evidence of actual confusion, among other indicia of confusion, in the relevant market. See *Amstar Corporation v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.) (holding that actual confusion evidence is the "best evidence of likelihood of confusion"), *cert. denied,* 449 U.S. 899 (1980).

15. The Court finds that Plaintiff has presented his own declaration and the declarations of four consumers. The Court finds this evidence establishes the likelihood of consumer confusion.

### 2. Plaintiff's Declarations Establish Actual Consumer Confusion

16. Evidence of actual confusion is not necessary to a finding of a likelihood of confusion, but "it is nevertheless the best evidence of likelihood of confusion." *Amstar Corporation,* 615 F.2d at 263. To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion, see *Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 491 (5th Cir.1992), or consumer surveys,

see *Exxon Corporation v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 506 (5th Cir.1980); *Scott Fetzer,* 381 F.3d at 486.

17.     Plaintiff does not have a heavy burden of providing scores of declarations. Indeed, very little evidence is required to establish the existence of the actual confusion factor. *Jellibeans, Incorporated v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 845 (11th Cir.1983); see also *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir.1971); *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1544 (11th Cir.1986) ("It is likely that many consumers who were confused never realized they had been confused and that many of those who did realize they had been confused chose not to spend the time to register a complaint with a faceless corporation...."), *cert. denied,* 481 U.S. 1041 (1987). When a movant produces evidence of actual confusion, "an almost overwhelming amount of proof would be necessary to refute" the evidence. *Dick Littrell's New World Carpets,* 438 F.2d at 489 ("[R]eason tells us that ... very little proof of actual confusion would be necessary to prove the likelihood of confusion."); *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 597 (5th Cir.1985) ("In no case have we sanctioned total disregard of evidence of actual confusion; there is simply no precedent for such a view...."); *Soweco, Inc. v. Shell Oil Company,* 617 F.2d 1178, 1186 (5th Cir.1980), *cert. denied,* 450 U.S. 981 (1981). Finally, reliance on a small number of consumer declarations is most appropriate at the early injunctive stage of litigation. See *Arrowpoint Capital Corporation v. Arrowpoint Asset Management, LLC,* 793 F.3d 313, 325 (3d Cir.2015) (Preliminary injunction granted based on four declarations).

18.     The Court finds that Plaintiff has presented his own declaration and the declarations of four consumers. The Court finds this evidence establishes actual consumer confusion.

### B. Plaintiff has Demonstrated Irreparable Harm

19. An injury is generally considered to be irreparable if the injury cannot be undone through monetary relief. *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472-73 (5th Cir.1985) (stating the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[s] heavily against a claim of irreparable harm"). An injunction is appropriate only if the anticipated injury is imminent and irreparable. *Chacon v. Granata,* 515 F.2d 922, 925 (5th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 279 (1975).

20. If determining the amount of damage would be extremely difficult, the court can consider the harm irreparable. *ICEE Distributors, Inc. v. J & J Snack Foods Corporation,* 325 F.3d 586, 597 (5th Cir.2003); *Wilkinson v. Manpower, Inc.,* 531 F.2d 712, 714 (5th Cir.1976). To be considered irreparable, the injury in question must imminent and cannot be speculative. *Watson v. Federal Emergency Management Agency,* 437 F.Supp.2d 638, 648 (S.D. Tex.2006), *vacated,* 2006 WL 3420613 (5th Cir.2006).

21. Parties asserting Lanham Act violations are entitled to a general presumption of irreparable harm.[1] *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 703 (S.D. Tex. 2015) (Gilmore, J.) ("Federal Courts have routinely held that injury should be presumed when a Lanham Act claim involves false or misleading comparative advertisements."). "All that must be proven to establish liability and the need for an injunction against [trademark] infringement is the likelihood of confusion—injury is presumed." *T-Mobile US, Inc. v. AIO Wireless LLC,* 991 F. Supp. 2d 888, 926 (S.D. Tex. 2014) (Rosenthal, J.) (*citing Abraham v. Alpha Chi Omega*, 708 F.3d

---

[1] This Preliminary Injunction is limited to the Lanham Act claim, as the attribution claim lacks this presumption.

614, 627 (5th Cir. 2013) (holding that a court may issue an injunction against trademark infringement once a likelihood of confusion is shown because irreparable injury is then presumed).

22. However, the presumption is not absolute as the Fifth Circuit has opined that, in some circumstances, irreparable injury can be presumed based on a showing of a likelihood of confusion. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (holding that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion, injury is presumed."); *see also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (commenting that "[w]hen likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of the goods or services" but also noting "[t]his Court has avoided 'expressly adopting this presumption of irreparable injury.'" (*quoting Quantum Fitness Corp. v. Quantum Lifestyle Ctrs.*, LLC, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (Rosenthal, J.) and *S. Monorail Co. v. Robbins & Myers, Inc*., 666 F.2d 185, 188 (5th Cir. 1982)).

23. In this instance, through the five attached declarations, the Court finds that the Plaintiff has more than satisfied the showing of confusion of goods necessary to demonstrate irreparable injury under Lanham Act precedent within the Fifth Circuit and its District Courts.

### C. Deceptive Advertising is not Protected Competition or Speech

24. For the following reasons, the Court finds that issuing this Preliminary Injunction will not violate the First Amendment's right to free speech.

25. First, competition is not unlimited, and an injunction will not be held to stymie competition where it only prevents illegal and/or unfair competition. See, *e.g., C.E. Services, Inc. v. Control Data Corporation,* 759 F.2d 1241, 1249 (5th Cir.1985) ("Only 'fair' competition will do, for 'if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly

8

situated, the ensuing loss should be redressed.'") (quoting *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 958 (5th Cir. 1975)), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985); *GoForIt Entertainment, LLC v. DigiMedia.com L.P.,* 750 F.Supp.2d 712, 739 n. 21 (N.D.Tex.2010) (Fitzwater, Chief J.) ("[T]here is a limit to what competitors can do in the name of competition.").

26. Second, even if the injunction harms Defendants' sales, it will be entirely due to Defendants' own actions of violating the Lanham Act through its current sales techniques. *See North American Olive Oil Association v. Kangadis Food Inc.,* 962 F.Supp.2d 514, 524 (S.D.N.Y.2013) (concluding that "any diminished goodwill [Defendant] Kangadis suffers from this injunction will largely be of its own doing").

27. Third, preventing people from violating the Lanham Act does not restrain speech in violation of the First Amendment. *Better Business Bureau of Metropolitan Houston, Inc. v. Medical Directors,* 681 F.2d 397, 404 (5th Cir.1982) ("False and misleading representations in advertising are not shielded by the first amendment; as 'unprotected speech,' such statements may be banned entirely.") (citing *Bates v. State Bar of Arizona,* 433 U.S. 350, 383, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) ("the leeway for untruthful or misleading expression that has been allowed in other contexts has little force in the commercial arena"); *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 771-72 (1976)); accord *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Limited,* 604 F.2d 200, 206 (2d Cir.1979) ("This is not a case of government censorship, but a private plaintiff's attempt to protect its property rights.").

28. In stark contrast, Plaintiff's interest in obtaining this preliminary injunction so it can sell its product free of unlawful competition far outweighs Defendants' interest in continuing to violate

the Lanham Act. *Chevron Chemical Company v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 705 (5th Cir.1981) (holding that a violator of the Lanham Act should be required to keep a safe distance from the line between legal and illegal conduct), *cert. denied,* 457 U.S. 1126 (1982).

### D.  A Preliminary Injunction Will Serve the Public Interest in Fair Competition

29. The Court also finds that the public interest in fair competition is served by the issuance of this Preliminary Injunction.

30. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp,* 83 F.Supp.2d at 832. "[T]he public has an interest in not being deceived." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F.Supp.2d 305, 344-45 (S.D.N.Y.2010) (citing *SK & F, Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F.2d 1055, 1067 (3d Cir.1980); accord *National Rural Electric Co-op Association v. National Agricultural Chemical Association,* No. 91-CV-156826, U.S.P.Q.2d (BNA) 1294, 1299, 1992 WL 477020, at *6 (D.D.C. Nov. 25, 1992) (the public interest lies in avoiding consumer confusion)).

### E.  Companies in Privity with Defendants Need to be Enjoined and Subjected to Expedited Discovery

31. Finally, in this case, the Court finds that the Defendants are using the cloak of internet secrecy to prevent Plaintiff from identifying who or what entity is the party that Plaintiff asserts is violating the Lanham Act and allegedly causing Plaintiff harm.

32. The Court finds that under standard internet protocols, there is no legal requirement for the owners of a website to be identified on website and provisions exist whereby the owner or operator of any website may purchase a service the keeps the website's ownership anonymous. Thus, Defendants' true identity or identities and the location[s] for service of process remain unknown.

33. The Court finds that this secrecy makes it impossible for Plaintiff to serve efendants within the timeframe for a preliminary injunction hearing unless the Court allows expedited discovery that require Defendants' website registration organization and/or any other internet service provider[s] in privity with Defendants to promptly identify the Defendants.

34. The Court likewise finds that this secrecy prevents Plaintiff from obtaining effective injunctive relief unless the Court issues a Preliminary Injunction that effectively requires internet service providers acting in concert or privity with Defendants through servicing, hosting, or assisting with the processing of internet sales through Robocallscash.net and Robocallscashkit.com, and any related websites that may be currently unknown to Plaintiff to immediately shut down these websites.

35. Accordingly, the Court finds that expedited discovery is necessary so that any internet service provider that is hosting Robocallscash.net and/or Robocallscashkit.com provide the Plaintiff the Defendants' true identity or identities, name[s], contact information, and other information about Defendants necessary for Plaintiffs to serve this Order on Defendants, and that until this Order expires or is revoked, any internet service providers or other entities directly or indirectly hosting Defendants' websites, Robocallscash.net and Robocallscashkit.com, Defendant's Facebook page is ordered to temporarily block the publication of the said websites or Facebook page and shut the website[s] and Facebook page down for the duration of the Preliminary Injunction or until instructed by further order of the Court.

## CONCLUSION

A.  **Prohibited Business Activities**

**IT IS HEREY ORDERED** that Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the marketing, selling, offering for sale or distribution of any goods or services, are temporarily restrained and enjoined from:

    Violating, or assisting others in violating, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), including, but not limited to

1) manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any products, merchandise or goods bearing the name, trademark, or likeness of the Plaintiff or his produce or any colorable variation or imitation thereof;

2) representing that any products, merchandise or goods manufactured, distributed, sold, held for sale or advertised by them is sponsored or authorized by Plaintiff in this district or in any other district in which Plaintiff seeks to enforce this Court's injunction order; and

3) using the name, image, or likeness of Plaintiff.

**B.**   **Service of Order Upon Third-Party Service Providers**

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Plaintiff by any law enforcement agency, or by process server, upon any person, including financial institutions, that may have possession, custody, or control over any Asset or Document belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant, or that may otherwise be subject to any provision of this Order.

**C.**   **Temporary Shutdown of Websites**

**IT IS FURTHER ORDERED** that and all other persons, organizations or entities

12

provided any nature of internet service, including web hosting, financial processing, managing of URLs, or otherwise in active concert or participation with a Defendant, or any of the Defendants, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the marketing, selling, offering for sale or distribution of any goods or services, are temporarily restrained and enjoined from:

A. Providing internet hosting services for Robocallscash.net and/or Robocallscashkit.com, until such time as the owners or operators of Robocallscash.net and/or Robocallscashkit.com remove all items that violate the Lanham Act; and

B. Maintaining the Secrecy of the owners, operators, and beneficiaries of Robocallscash.net and/or Robocallscashkit.com.

D. **Distribution of Order by Defendants**

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, subsidiary, division, and representative of any Defendant. Within five (5) business days following service of this Order, defendants shall serve on the plaintiff an affidavit identifying the name, title, address, telephone number, date of service, and manner of service of each person defendants have served with a copy of this order in compliance with this provision.

E. **Duration of Preliminary Injunction Order**

**IT IS FURTHER ORDERED** that this Preliminary Injunction Order granted herein shall remain in full force and effect until replaced or removed by order of the Court or through the granting of a permanent injunction.

**F.     Retention of Jurisdiction**

     **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**G.     Bond Requirement**

     **IT IS FURTHER ORDERED** that Plaintiff is **not required to post bond** in connection with this preliminary injunction.

    **SIGNED this 18th day of August, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE